984 P.2d 1276

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Clarence Kalani SMITH, Sr., Defendant–Appellant.**

**No. 21450.**

Intermediate Court of Appeals of Hawai'i.

June 29, 1999.

Certiorari Denied Oct. 7, 1999.

Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

Keith S. Shigetomi, on the briefs, Honolulu, for Defendant–Appellant.

BURNS, C.J., WATANABE and ACOBA, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Clarence Kalani Smith, Sr. (Smith), appeals the circuit court's February 24, 1998 Judgment; Guilty Conviction and Sentence (February 24, 1998 Judgment) convicting him pursuant to a jury verdict of Attempted Murder in the First Degree, Hawai'i Revised Statutes (HRS) §§ 705–500 and 707–701(1)(a) [1] (1993), and sentencing him to life imprisonment without the possibility of parole.[2] We vacate and remand for a new trial consistent with this opinion.

In this opinion we decide that: (1)(a) during its rebuttal argument to the jury, the prosecution improperly commented negatively on the defendant's exercise of his right to argue alternatively for a complete acquittal or a conviction of one of the included offenses, and (b) the improper comment was not harmless beyond a reasonable doubt;

---

1. Hawai'i Revised Statutes (HRS) § 707–701(1)(a) (1993) states as follows: "(1) A person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of: (a) [m]ore than one person in the same or separate incident[.]"

2. Although the February 24, 1998 Judgment; Guilty Conviction and Sentence sentenced Defendant–Appellant Clarence Kalani Smith, Sr. (Smith), to life without the possibility of parole, it also ordered that "[t]he Director of the Department of Public Safety and the Hawaii Paroling Authority shall prepare an application for the Governor to commute the sentence to life in prison with parole at the end of 20 years of imprisonment."

(2)(a) during its rebuttal argument to the jury, the prosecution improperly commented on the defendant's physical reaction and oral responses while a complaining witness was testifying and thereby violated the defendant's right to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and (b) the improper comment was not harmless beyond a reasonable doubt; (3) having instructed the jury regarding the self-defense justification, the trial court did not err when it declined to instruct the jury on the "choice of evils" and "mistake of fact" defenses; (4) the trial court (a) did not err when it declined to instruct the jury on Reckless Endangering in the Second Degree and Assault in the Second Degree based on recklessness, (b) erred when it declined to instruct the jury on Assault in the First Degree and Assault in the Second Degree, and (c) erred when it instructed the jury on Attempted Assault in the First Degree and Attempted Assault in the Second Degree.

## BACKGROUND

In its June 30, 1994 Indictment, the Grand Jury charged Smith with one count of Attempted Murder in the First Degree (Count I), three counts of Attempted Murder in the Second Degree (Counts II–IV), HRS §§ 705–500 and 707–701.5(1) (1993), and one count of Carrying Firearm on Person Without License (Count V), HRS §§ 134–9 and 134–17(d) (1993).[3]

At the trial in November 1997, Smith did not testify, offer any exhibits, or call any witnesses. In relevant part, the State of Hawai'i presented the following evidence.

Smith lived near the Dela Cruz family on Linakola Street in the Wai'anae area and often complained about the noise and rubbish coming from the Dela Cruz residence. At the time relevant to this case, Esmenia Dela Cruz lived with her husband, Felix Dela Cruz, and their two youngest sons, Fulton

Dela Cruz (Fulton) and Adrian Dela Cruz (Adrian).[4]

On April 17, 1990, Stanley Aquino (Aquino) was working as a mason and building a wall at the residence of James Glover, Jr. (Glover), who also lived on Linakola Street. While Aquino and Glover were outside at Glover's house, Smith approached them and began complaining about the Dela Cruz family. Glover testified that Smith told him that "he would take care of them." Aquino testified that Smith told him that "he wanted to shoot all of them[.]"

The next day, April 18, 1990, Smith was driving on Linakola Street when he got into an argument with Fulton in front of the Dela Cruz residence. While Smith was in the car, Smith and Fulton were shouting and swearing at each other. When Fulton's girlfriend, Priscilla Bobbitt (Bobbitt), saw them arguing, she went into the Dela Cruz house to call Adrian. Adrian came out of the house, grabbed Fulton, and "told Fulton [to] let [Smith] go[.]" He also told Smith to leave them alone.

Smith started to drive forward but then stopped and reversed his car. Smith then exited his car and approached Fulton and Adrian. Larry Souza (Souza), a neighbor who witnessed the incident, testified that he "saw a guy come out of a car, stocky build.... And he walked toward ... where [these] two young boys were hollering at him. The young boys kept telling [him], 'Come on, you fucking punk. Come on. Come on.'" He also testified that Fulton and Adrian were "jumping around" and in "a fighting pose." Fulton testified that he and Adrian were yelling and swearing at Smith and that Smith was swearing at them and told them, "I teach you freaking young punks, you guys, one lesson right now." Adrian testified that Smith told them, "I going to teach you guys a fucking lesson." Neither Fulton nor Adrian attacked Smith.

Smith pulled out a gun and, from about five to eight feet away, fired one shot at

---

3. Count V for Carrying Firearm on Person Without License, HRS §§ 134–9 and 134–17 (1993), was dismissed by the court on the grounds that "it [did] not state essential elements of the offense[.]"

4. Fulton Dela Cruz (Fulton), born on December 1, 1970, and Adrian Dela Cruz (Adrian), born on December 1, 1971, were the youngest of seven children.

Fulton which hit Fulton in his "upper belly." Next, as Adrian attempted to help Fulton, Smith fired one shot at Adrian which hit Adrian in the back near his left shoulder blade. Smith then fired two shots at Bobbitt as she was running toward the Dela Cruz house from the garage. One of the shots hit Bobbitt in the back. None of the shooting victims died.

Fulton testified that after the shooting, Smith told him and Adrian, "That's what you guys deserve, fucking young Filipinos." Adrian testified that Smith told them, "[T]hat's what you guys get when you guys fucking think you guys tough." Souza testified that Smith told Fulton and Adrian, "I told you guys don't fuck with me."

In Defendant's Requested Jury Instructions, Smith requested, in relevant part, that the court give instructions on (a) the "choice of evils" defense (Defendant's Requested Instruction No. 3), (b) the "mistake of fact" defense (Defendant's Requested Instruction No. 5), and (c) the included offenses of (i) Assault in the First Degree (Defendant's Requested Instruction Nos. 9, 13, and 17), (ii) Assault in the Second Degree based on recklessness (Defendant's Requested Instructions No. 10, 14, and 18), and (iii) Reckless Endangering in the Second Degree (Defendant's Requested Instruction Nos. 11, 15, and 19).

During the settlement of the jury instructions, the court stated:

> First of all, lesser includeds [sic] under [Counts] 2, 3 and 4, will be given with respect to Attempted Assault in the First Degree and Attempted Assault in the Second Degree under all three of those counts.
>
> And I'll note for the record that there will be no completed assaults given as lesser included under those counts.
>
> Also, court ... will be giving a self-defense instruction.

Court will not be giving ... a choice of evils defense instruction.

. . . .

Court will not be giving a mistake of fact instruction.

. . . .

The court will not be giving the lesser Reckless Endangering, Second Degree lesser included instruction.

Smith objected to the court's refusal to give instructions on the "choice of evils" and "mistake of fact" defenses and the included offenses of Assault in the Second Degree based on recklessness and Reckless Endangering in the Second Degree. Smith withdrew his request for an instruction on Assault in the First Degree.[5]

In his rebuttal argument to the jury, the Deputy Prosecuting Attorney (DPA) argued in relevant part as follows:

> [DPA]: Ladies and gentlemen of the jury, the evidence in this case, the undisputed evidence in this case shows by overwhelming means beyond all reasonable doubt that the defendant is guilty as charged.
>
> . . . .
>
> It is not—okay, let's look at really what happened. Defendant's motive, we don't—the State doesn't have to prove motive but this was a motive, the feud, the disliking.
>
> Was race also involved? Perhaps. After the defendant shot the brothers and Priscilla Bobbitt, what did he say? That's what you get, you fucking young Filipinos. What did the defendant tell the mother previous—on previous occasions? People like you shouldn't be allowed to rent on this street.
>
> But there was a motive. He disliked them. Whether it was race or whether it was just the noise, the rubbish, the park-

---

5. The relevant transcript reporting the conversation during the settlement of jury instructions reports in relevant part as follows:

> [DEFENSE COUNSEL]: ...
> As to number 9 [(Defendant's Requested Instruction on Assault in the First Degree)], I guess, the court is saying that we have withdrawn that. And that's fine because of the Attempted Assault in the First Degree.

> I think Defendant's Number 10 [(Defendant's Requested Instruction on Assault in the Second Degree based on recklessness)], that's in line with our request for the reckless causing serious bodily injury Attempt, Second.
> THE COURT: All right. So that's refused over objection.

ing, he disliked them. That was his motive.

You've got premeditation. The day before, if they don't quit hassling me, I'm going to take care of them. I hate the Dela Cruz family. I want to shoot all of them, especially the mother and the father. I got to get close 'cause I can't see too good. You got premeditation.

And look at his statements after the incident, you fucking young Filipinos, that's what you get for fucking with me. I told you fuckers not to fuck with me, taught you a lesson. Motive, premeditation, execution and then disdain.

At trial you saw [Smith's] reaction when Fulton Dela Cruz was testifying. On one occasion he chortled and he started grumbling.

[Defense Counsel]: Your Honor, this is clearly not evidence and I think it's improper for [the prosecution] to refer to that and base his argument on that.

THE COURT: Overruled.

[DPA]: At least some of you must have seen that. At that point I stepped back from the podium—

[Defense Counsel]: Your Honor, this amounts to testimony at this point and I would object to that.

[DPA]: Your Honor this is—

THE COURT: Overruled.

[DPA]: Disdain. Didn't like them back then, doesn't like them now. No extreme emotional disturbance, it's just disliking for the Dela Cruz family.

Later, the DPA told the jury:

That's what he did and that's why he should be convicted as charged of Attempted Murder in the First Degree. Don't— does it insult your intelligence that the defense is arguing self-defense but if you don't believe self-defense, then extreme, [sic] emotional disturbance, but if you don't believe that or self-defense, then Attempted Assault I, and if you don't believe that, then Attempted Assault II? What is the defense doing? Don't they have conviction in their case?

Defense counsel objected on the basis that this was improper argument. The court overruled this objection and the DPA continued.

Don't they have conviction in the case that they can stand up here and look you straight in the eye, he's not guilty of the Attempted Murder in the First Degree or Attempted Murder in the Second Degree? They're telling you find this or find this, or if you can't, if you can't, then how about this or how about that.

On November 17, 1997, Smith filed a Motion for Mistrial based on his objections during the DPA's closing argument. In denying the motion, the court stated as follows:

All right. Well, I don't see how arguing about defendant's arguments, even though defendant didn't put on a case, shifts the burden of proof. As long as defendant's going to argue alternative offenses and alternative defenses, then it would appear to be a strategic decision and defendant bears the risk of the lack of conviction argument so I don't think that's a problem.

With respect to referring to Mr. Smith's demeanor during trial, I don't think it makes him a witness of any sort. Perhaps the better practice would have been during trial for [the] prosecutor to get it on the record regarding certain behaviors, but even the Court noted that reaction during the testimony of one of the witnesses, so it was evident and I don't think it merits a mistrial in any event. So I'll deny the motion.

The court instructed the jury in relevant part as follows:

If and only if you find, under Count I of the indictment, the defendant not guilty of Attempted Murder in the First Degree, or you are unable to reach a unanimous verdict as to this offense, then you must determine, under each of Count II, Count III and Count IV, whether the defendant is guilty or not guilty of the offense of Attempted Murder in the Second Degree.

. . . .

Under any of Count II, Count III or Count IV of the indictment, if and only if you find the defendant not guilty of the charged offense of Attempted Murder in the Second Degree, or you are unable to

reach a unanimous verdict as to this offense, then you must determine, under that count or counts of the indictment, whether the defendant is guilty or not guilty of the included offense of Attempted Assault in the First Degree.

. . . .

Under any of Count II, Count III or Count IV of the indictment, if and only if you find the defendant not guilty of the included offense of Attempted Assault in the First Degree, or you are unable to reach a unanimous verdict as to this offense, then you must determine, under that count or counts of the indictment, whether the defendant is guilty or not guilty of the included offense of Attempted Assault in the Second Degree.

On November 19, 1997, the jury found Smith guilty of Count I, Attempted Murder in the First Degree.

On November 26, 1997, Smith filed a Motion for Judgment of Acquittal and/or New Trial based on the prosecution's closing argument and an alleged insufficiency of evidence. The court denied this motion.

On December 8, 1997, the court entered its Order Dismissing Counts II–IV Without Prejudice.

## DISCUSSION

On appeal, Smith contends that the trial court erred when it (1) denied Smith's Motion for Judgment of Acquittal and/or New Trial and (2) refused to give certain jury instructions requested by Smith.

### I.

### DENIAL OF THE MOTION FOR A NEW TRIAL

#### A.

■ Smith argues that the DPA's reference to the evidence as "undisputed evidence" was an improper comment on Smith's failure to testify and an attempt to shift the burden of proof to Smith. We disagree.

■ During closing argument, a prosecutor "is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence." *State v. Clark*, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996) (citation omitted).

The test to be applied is whether the language used was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." The prosecution is entitled to call attention to the fact that the testimony of the witnesses for the prosecution has not been controverted, unless the circumstance that the defendant is the only one who could possibly contradict that testimony would necessarily direct the jury's attention solely to the defendant's failure to testify.

*State v. Padilla*, 57 Haw. 150, 158, 552 P.2d 357, 362–63 (1976) (citations omitted); *see also United States v. Clark*, 982 F.2d 965, 968 (6th Cir.1993) (ruling a prosecutor can comment on a defendant's failure to call witnesses, but must avoid commenting "in such a way that he[/she] treads on the defendant's constitutional rights and privileges") (citation omitted); *United States v. Lopez*, 803 F.2d 969, 973 (9th Cir.) (stating a prosecutor "may call attention to the defendant's failure to present exculpatory evidence if those comments do not call attention to the defendant's failure to testify") (citations omitted), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1986); *State v. Hodges*, 105 Idaho 588, 671 P.2d 1051, 1054 (1983) (holding that the prosecutor's comment that a state witness' testimony was "uncontradicted" was not "an impermissible reference to the defendant's failure to testify. Rather it [was] a comment on the weight of the evidence produced[.]"); *State v. Quinn*, 871 S.W.2d 80, 81 (Mo.Ct.App. 1994) (stating "[c]omments indicating the evidence is 'uncontroverted' or 'uncontradicted' are not direct, indirect, or certain references to a defendant's failure to testify") (citation omitted).

In Smith's case, the DPA's use of the phrase "undisputed evidence" at the start of his rebuttal argument was not "manifestly intended or ... of such character that the jury would naturally and necessarily take it

to be a comment on the failure of [Smith] to testify." *See Padilla*, 57 Haw. at 158, 552 P.2d at 362 (citation omitted).

### B.

 Smith contends that the DPA improperly commented negatively about the part of Smith's closing argument which asked the jury for an acquittal based on self-defense or, if that request was denied, for a conviction of one or more of the included offenses. We agree. We conclude that the defendant has the right to argue in favor of an acquittal and, alternatively, for each relevant included offense, and that it is improper for the State to speak negatively to the jury about such an argument by the defendant.

 It is the rule in Hawai'i that " *'[a] defendant has the right to argue inconsistent defenses* and he [or she] would be entitled to have the jury instructed on ostensibly inconsistent theories of defense if there is evidence supporting the theories." *State v. Ito*, 85 Hawai'i 44, 46, 936 P.2d 1292, 1294 (App.) (quoting *State v. Lira*, 70 Haw. 23, 29, 759 P.2d 869, 873 (1988) (emphasis added) (citations, internal quotation marks and ellipses omitted)), *cert. denied*, 85 Hawai'i 196, 940 P.2d 403 (1997).

In *Williams v. State*, 593 So.2d 1189 (Fla. Dist.Ct.App.1992), the prosecutor told the jury in his closing argument that the defendant was "hop[ing] [they would] feel sorry for [him] and disobey the law and find [him] guilty of some lesser charge[.]" *Id.* at 1190. The appellate court ruled that this comment was "patently improper" and that "[a] prosecutor may not indulge in attacks upon the ... accused['s] ... valid defense." *Id.* (citations omitted).

In *Cooper v. State*, 413 So.2d 1244 (Fla. Dist.Ct.App.), *rev. denied*, 421 So.2d 518 (Fla. 1982), the prosecutor commented in his closing argument that included offenses were " 'an old defense trick' when there was no chance of acquittal and the defense wants to get less than what the man really is guilty

of." *Id.* at 1245. The court concluded that this was improper argument. *Id.*

### C.

 Smith also contends that the DPA "essentially testified that Smith chortled and grumbled during the testimony of a complaining witness" and "was requesting the a[sic] verdict be based on an improper basis and his assertion of personal knowledge." We conclude that the DPA's comment in his rebuttal argument on Smith's reaction during trial was improper.

Other courts have differed on whether a prosecutor may comment during closing argument on a defendant's conduct and demeanor during trial. *See State v. Rivera*, 253 N.J.Super. 598, 602 A.2d 775, 777 (Ct. App.Div.), *cert. denied*, 130 N.J. 12, 611 A.2d 650 (1992). Some courts have decided that such comments are improper on the grounds that they are inadmissible character evidence and violate the defendant's constitutional rights. In *United States v. Schuler*, 813 F.2d 978 (9th Cir.1987), the prosecutor commented in closing argument on the defendant's laughter during trial. On appeal, the United States Court of Appeals for the Ninth Circuit held that

> where a prosecutor comments on the conduct of a non-testifying defendant and the judge overrules the resulting objection without giving a curative instruction, the defendant's character is improperly put at issue [under Federal Rules of Evidence Rule 404(a) ][6] and his fifth amendment rights not to testify and not to be convicted except on the basis of the evidence admitted at trial are violated.

*Id.* at 982 (footnote added).

In *United States v. Pearson*, 746 F.2d 787 (11th Cir.1984), the prosecutor commented in her closing argument as follows, "You saw him sitting there in the trial. Did you see his leg going up and down? He is nervous." *Id.* at 796. The trial court overruled the defendant's objection and did not give a curative instruction. In reversing the defen-

---

**6.** Federal Rules of Evidence (FRE) Rule 404(a) states in relevant part that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he

acted in conformity therewith on a particular occasion...." This part of FRE Rule 404(a) is identical to Hawai'i Rules of Evidence (HRE) Rule 404 (1993).

dant's conviction on appeal, the United States Court of Appeals for the Eleventh Circuit stated that "[i]n overruling [the defendant's] objection and in failing to give a curative instruction, the court, in effect, gave the jury an incorrect impression that [the defendant's] behavior off the witness stand was evidence in this instance, upon which the prosecutor was free to comment." *Id.*

Other courts have allowed prosecutors to comment in closing argument on a defendant's conduct or demeanor during trial where that conduct or demeanor was introduced as evidence and was not improper character evidence. In *State v. Norwood,* 161 Wis.2d 676, 468 N.W.2d 741 (Ct.App.), *rev. denied,* 473 N.W.2d 503 (Wis.1991), during defense counsel's redirect examination of a witness, the prosecutor requested as follows:

> Your honor, I would request that the record show that on a number of occasions this defendant has been laughing during the course of the proceedings. I don't know what he's laughing about. The record should show that he was laughing when the victim's mother was testifying.

*Id.* at 742. During the prosecutor's cross-examination of the defendant, the prosecutor asked the defendant if he was laughing while his attorney was cross-examining the victim's mother. The court overruled an objection, and the defendant admitted he was smiling but denied laughing. *Id.* When the victim's mother was called as a rebuttal witness, the prosecutor asked her what she observed about the defendant during her previous testimony. Over objection, she testified: "He was laughing at me and giving me smart looks like—like he is now. Being real reluctant like he did not have a care in the world." *Id.* Finally, during closing arguments the prosecutor commented on the defendant's conduct and asked how anyone could find it amusing to see the mother of an eleven-year-

old girl testify about a sexual assault upon the girl. *Id.*

On appeal, the defendant cited *United States v. Carroll,* 678 F.2d 1208 (4th Cir. 1982), and argued that it was improper for the prosecutor to comment on the defendant's conduct during trial. In *Carroll,* the defendant had been convicted of bank robbery, bank larceny, and assault with a dangerous weapon during a bank robbery. *Id.* at 1208. The United States Court of Appeals for the Fourth Circuit reversed the defendant's conviction and held that the prosecutor's statements during closing argument that during the trial the defendant had pointed to and explained pictures of the bank robbery to his attorney were improper. *Id.* at 1210.

In *Norwood,* the Wisconsin Court of Appeals affirmed the defendant's conviction and distinguished *Carroll* by stating as follows: "Here, the comment during the closing argument on the defendant's laughing was preceded by evidence of the laughing.... Thus, this is not a case where the prosecutor relied on courtroom demeanor about which no evidence was adduced as was the situation in *Carroll.*" *Id.* at 743. The issue of the relevance of the defendant's laughter was not discussed.

In *United States v. Mickens,* 926 F.2d 1323 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992), the trial court allowed a prosecution witness to testify that the defendant "made a hand gesture in the shape of a gun as [the witness] entered the courtroom to testify." *Id.* at 1328. The United States Court of Appeals for the Second Circuit stated that such evidence was admissible under Federal Rules of Evidence (FRE) Rule 404(b) [7] as evidence "not offered to prove [the defendant's] bad character or criminal propensity, but rather to prove his consciousness of guilt." *Id.* at 1329 (citation omitted).

---

7. FRE Rule 404(b) states that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident.

HRE Rule 404 (1993) "closely resembles" FRE Rule 404. *See* HRE Rule 404 Commentary (1993). "[HRE] Rule 404(b) differs from [FRE] Rule 404(b) in that the latter does not list 'modus operandi.'" *Id.*

In *United States v. Gatto*, 995 F.2d 449 (3d Cir.), *cert. denied*, 510 U.S. 948, 114 S.Ct. 391, 126 L.Ed.2d 339 (1993), the prosecutor asked a prosecution witness about the following three occasions during trial when a co-defendant looked at the witness: (1) when the co-defendant passed the witness in the courthouse hall; (2) when the witness was in the back of the room waiting to testify and the co-defendant turned his chair around to look at him; and (3) when the co-defendant "stood up and looked at [the witness] during a sidebar while [the witness] was on the stand." *Id.* at 452. During the prosecutor's closing argument, the prosecutor remarked on the co-defendant's conduct as follows: "Ladies and gentlemen, the audacity of [the co-defendant] to *stand up and attempt to* intimidate a witness who is testifying before you in United States District Court is breathtaking." *Id.* at 453. The trial court overruled the defendant's objection on the ground that, "since [the co-defendant's] looks were arguably threats, they could be considered by the jury as evidence of consciousness of guilt." *Id.*

On appeal, the United States Court of Appeals for the Third Circuit ruled that evidence of the co-defendant's looks was admissible under FRE Rule 404(b) as evidence of "other crimes, wrongs, or acts" admitted for purposes other than "to prove the character of a person in order to show that he [or she] acted in conformity therewith." *Id.* at 454. *See* FRE Rule 404(b). It explained that "[i]t is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt, as well as to impeach a witness whose testimony was influenced by such conduct." *Id.* (footnotes omitted). The court further stated:

> At the same time, testimony that an individual being tried for a serious crime looks unhappy during the trial or appears irritated at someone who is testifying for the government will in many instances have very little tendency to demonstrate consciousness of guilt. As a result, evidence alleged to show intimidation through the defendant's demeanor may frequently be excludable under [FRE Rule] 403[.] [8]

*Id.* at 456 (footnote added).

In Smith's case, the DPA sought to use the fact of Smith's reaction when Fulton was testifying to show that when Smith shot the victims, Smith did not act "under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation." [9] In the relevant words of the DPA, "Disdain. Didn't like them back then, doesn't like them now. No extreme emotional disturbance, it's just disliking for the Dela Cruz family."

The DPA possibly could have introduced evidence of Smith's conduct during trial if the evidence satisfied the relevant requirements of the rules of evidence. [10] If such evidence had been lawfully introduced during trial, Smith's conduct during trial would have been the proper subject for comment during

8. FRE Rule 403 states as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE Rule 403 (1993) is identical to FRE Rule 403. *See* HRE Rule 403 Commentary (1993).

9. The court instructed the jury in relevant part as follows:

> The prosecution must prove beyond a reasonable doubt that the defendant was not, at that time, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. If the prosecution has done so, then you must return a verdict of guilty of Attempted Murder in the First Degree. If the prosecution has not done so, then you

> must consider a verdict of guilty of Attempted Manslaughter based upon extreme mental or emotional disturbance.

10. In *In re Estate of Carmen Corrine Herbert, Deceased*, 90 Hawai'i 443, 979 P.2d 39 (1999), the Hawai'i Supreme Court concluded in relevant part that

> [a]lthough approximately one year after Carmen's execution of the 1989 Will, evidence of Soth's desire to gain control over Carmen's estate is corroborative of and tends to show that Soth had an overarching plan and motive *to exert undue influence over Carmen at the* time of [the] 1989 Will's execution.

*Id.* 90 Hawai'i at 448, 979 P.2d at 44 (footnote omitted). Similarly, evidence of Smith's conduct during the trial tends to show Smith's state of mind at the time of the incident.

the DPA's closing argument. However, such evidence was not introduced. Unless and until Smith's reaction during the trial was lawfully introduced as evidence, it was not a proper subject for argument to the jury.[11] Therefore, the DPA's comment in his rebuttal argument on Smith's reaction during trial violated Smith's right "to have his guilt or innocence determined solely on the basis of the evidence introduced at trial[.]" *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).

### D.

Generally, the denial of a motion for new trial "is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion." *State v. Ganal,* 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) (citation omitted). Hawai'i Rules of Penal Procedure (HRPP) Rule 52(a) states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

In situations where prosecutorial misconduct caused prejudice to the defendant's right to a fair trial, however, a new trial must be ordered. *State v. Moore,* 82 Hawai'i 202, 213, 921 P.2d 122, 133 (1996) (citing *State v. McGriff,* 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994) (citing *State v. Pemberton,* 71 Haw. 466, 476, 796 P.2d 80, 85 (1990))).

In Hawai'i,

prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial. In determining whether prosecutorial misconduct constitutes reversible error, we have considered [ (1) ] the nature of the misconduct, [ (2) ] the promptness of the curative instruction or lack of it, and [ (3) ] the strength or weakness of the evidence against the defendant.

*State v. Knight,* 80 Hawai'i 318, 327, 909 P.2d 1133, 1142 (1996) (quotation marks and cita-

tions omitted; brackets in original); *see also State v. Kupihea,* 80 Hawai'i 307, 316, 909 P.2d 1122, 1131 (1996) (citations omitted).

This court has concluded that "[t]o determine whether reversal is required under HRPP Rule 52(a) because of improper remarks by a prosecutor which could affect Defendant's right to a fair trial, we apply the harmless beyond a reasonable doubt standard of review." *State v. Sanchez,* 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App.) (citations omitted), *cert. denied,* 84 Hawai'i 127, 930 P.2d 1015 (1996). " 'In applying the harmless beyond a reasonable doubt standard the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction.' " *State v. Balisbisana,* 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996) (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917 (1995) (citations and internal quotation marks omitted)).

Thus, although the DPA's comments on Smith's reaction during trial and on Smith's closing argument in favor of an acquittal based on self-defense or a conviction of an included offense were improper, we must decide whether there is a reasonable possibility that the comments complained of might have contributed to the conviction.

In *State v. Johnson,* 55 Or.App. 98, 637 P.2d 211 (1981), the defendant was charged with burglary in the first degree. At trial, the defendant testified that he never entered the building in question. *Id.* at 212. In her closing argument, the prosecutor referred to the defendant's request for jury instructions on the included offenses of burglary in the second degree and criminal trespass and then commented as follows: "The defendant took the stand and under oath he swore that he was not in this building. You will notice that this element of entering and remaining is common to all three crimes and I'd like to hear [defense counsel] explain[.]" *Id.* The Oregon Court of Appeals reversed the defen-

---

11. In *State v. Sanchez,* 82 Hawai'i 517, 923 P.2d 934 (App.), *cert. denied,* 84 Hawai'i 127, 930 P.2d 1015 (1996), this court concluded that "it would be 'unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of

facts outside the record.' " *Id.* at 534, 923 P.2d at 951 (quoting 1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.9 (2d ed.1986)).

dant's conviction on the grounds that the prosecutor's comment was improper and prejudicial despite a curative instruction by the trial court. *Id.* at 213.

In *State v. Ganal,*

> During David [Touchette's] testimony, Ganal jumped up, grabbed a water pitcher on counsel's table, and lunged forward, yelling: "You're a fucking liar. I never said anything like that. You asshole." At that point, a deputy sheriff intervened, and the water pitcher fell to the ground and broke. Ganal's counsel also tried to block Ganal from going forward. The trial court then took a recess. Later, the court examined each of the jurors individually, and, as a result, one juror was excused. Ganal, however, did not move for a mistrial.

81 Hawai'i at 377–78, 917 P.2d at 389–90. During the prosecutor's closing argument, the prosecutor stated in relevant part as follows:

> And, you know, I'm being sarcastic and cynical and all of that and maybe it's unfair because *he can't jump up and whack me* if he wanted to. But, you know, it's the big shibai [red herring or putting on an act], this whole story of amnesia, can't remember. *Stand up like a man* and say he did it, that's the-

*Id.* at 375, 917 P.2d at 387 (emphases and brackets in original). At that point, the court sustained defense counsel's objection. *Id.*

On appeal, Ganal contended that the prosecutor's comment "impermissibly referred to and reminded the jury of Ganal's previous violent outburst in the courtroom while David Touchette was on the witness stand." *Id.* at 377, 917 P.2d at 389. The Hawai'i Supreme Court decided that the prosecutor's reference to Ganal's outburst during trial was harmless beyond a reasonable doubt. The court based its decision on "(1) the fact that the jurors were all individually voir dired after Ganal's outburst and one juror was excused; (2) the fact that Ganal did not move for a mistrial against advice of counsel; and (3) the strength of the evidence adduced at trial[.]" *Id.*

In Smith's case, the trial court overruled Smith's objection to the DPA's comment on Smith's reaction during trial and denied Smith's motion for a mistrial. Additionally, while it was undisputed that Smith shot the complaining witnesses, the evidence of whether Smith had the required state of mind for attempted murder is not as compelling. A reasonable juror could have found that Smith did not intend to cause the deaths of the complaining witnesses, but only to cause serious bodily injury to them.

 We recognize that the court instructed the jury that "[y]ou must consider only the evidence which has been presented to you in this case and such inferences therefrom as may be justified by reason and common sense" and that "[s]tatements or remarks made by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence." We further recognize that "it will be presumed that the jury adhered to the court's instructions." *Kupihea,* 80 Hawai'i at 317–18, 909 P.2d at 1132–33 (citations omitted). Nevertheless, considering the three relevant criteria for determining whether prosecutorial misconduct warrants a new trial and the prosecution's burden of showing harmlessness beyond a reasonable doubt, we conclude that the DPA's improper comments on Smith's reaction during the trial and on Smith's closing argument in favor of an acquittal based on self-defense or a conviction of an included offense were not harmless beyond a reasonable doubt and warrant vacating Smith's conviction and granting a new trial.

## II.

## JURY INSTRUCTIONS

Although we have already decided that Smith is entitled to a new trial, we will discuss Smith's arguments relating to the denial of his requested jury instructions since they may be relevant to this case on remand.

## A.

 In reviewing the omission of jury instructions on appeal, the standard of re-

view is "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Arceo*, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996) (citations omitted).

In other words, the first question is whether the instructions given are insufficient, erroneous, inconsistent, or misleading. If the answer to the first question is yes, the instructions are erroneous and "[e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Id.* (quotation marks and citation omitted). In other words, the second question is whether the prosecution satisfied its burden of showing that the erroneous instructions were harmless beyond a reasonable doubt.

### B.

The trial court instructed the jury on the offenses of Attempted Murder in the First and Second Degree and Attempted Assault in the First and Second Degree. Smith argues that the court erred by not instructing the jury on the "choice of evils" and "mistake of fact" defenses. We disagree.

A criminal defendant is entitled to a jury instruction "on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive or unsatisfac-

tory the evidence may be." *State v. Robinson*, 82 Hawai'i 304, 313–14, 922 P.2d 358, 367–68 (1996) (emphasis in original and citation omitted).

Assuming evidence that Smith acted in self-defense was presented,[12, 13] the following statutes are relevant. HRS § 701–115 (1993) states in relevant part as follows:

**Defenses.** (1) A defense is a fact or set of facts which negatives penal liability.

(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:

(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]

Pursuant to HRS § 703–301(1) (1993), "justification, as defined in sections 703–302 through 703–309, is a defense."

HRS § 703–304 (1993) delineates what constitutes self-defense. It states as follows:

(1) ... the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

(2) The use of deadly force[14] is justifiable under this section if the actor believes

---

12. In his closing argument to the jury, Smith's counsel stated in relevant part as follows:

[Fulton and Adrian] were upset. They wanted to fight this old man, and they were going forward. And they were going forward and they were in the state of mind that they had [and] [Smith] had a right to protect himself. That's the self-defense.

. . . .

But out of the mouth of their own witness in a courtroom to jurors he said: I—Adrian and I stepped forward right before we got shot.

13. An argument can be made that Smith was not entitled to a jury instruction on self-defense. HRS § 703–304(5)(b) (1993) states that the use of deadly protective force is not justifiable if "[t]he actor knows that he can avoid the necessity of using such force with complete safety by

retreating[.]" In this case, the undisputed evidence was that Smith was in his car and could have easily driven away. Instead, carrying a firearm, he exited his car and approached Fulton and Adrian. Nothing in the evidence presented suggests that Smith could not have safely retreated from the scene of the incident.

14. HRS § 703–300 (1993) defines "deadly force" as:

force which the actor uses with the intent of causing or which the actor knows to create a substantial risk of causing death or serious bodily harm. Intentionally firing a firearm in the direction of another person or in the direction which another person is believed to be constitutes deadly force.

Thus, Smith's shooting of Fulton, Adrian, and Priscilla Bobbitt qualifies as deadly force.

that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

(Footnote added.) HRS § 703–300 (1993) defines "believes" as "reasonably believes."

Consistent with these statutes, the trial court instructed the jury in relevant part as follows:

Justifiable use of force—commonly known as self[-]defense—is a defense to each and every offense brought against the defendant in this case. The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justifiable. If the prosecution does not meet its burden, then you must find the defendant not guilty.

The use of force upon or toward another person is justified when a person reasonably believes that such force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person. The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware of as the defendant reasonably believed them to be.

The use of deadly force upon or toward another person is justified when a person using such force reasonably believes that deadly force is immediately necessary to protect himself on the present occasion against death or serious bodily injury. The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be true.

The use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter, or if the defendant knows that he can avoid the necessity of using such force with complete safety by retreating.

Smith contends that he was entitled to an instruction on the "choice of evils" defense because "[he] believed that his action[s] [were] necessary to avoid an imminent harm" to himself. HRS § 703–302 (1993) provides as follows:

**Choice of evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:

(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

(b) Neither the [Hawai'i Penal] Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

■ Smith argues that he was entitled to an instruction on the "choice of evils" defense "[f]or the same reasons that a self[-]defense instruction was given[.]" We conclude the "choice of evils" defense does not apply in this case because the "[Hawai'i Penal] Code ... provides ... [a] defense dealing with the specific situation involved[.]" HRS § 703–302(1)(b). In other words, the "choice of evils" defense does not apply because the defense based on the self-defense justification applies.

■ HRS § 702–218 (1993) states in relevant part that "it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if: (1)[t]he ignorance or mistake negatives the state of mind required to establish an element of the offense[.]"

Smith argues that he was entitled to an instruction on the "mistake of fact" defense since "[he] may have mistakenly believed that the Dela Cruz brothers were coming forward to seriously harm him[.]" In other words, Smith contends that he may have intentionally engaged in the prohibited con-

duct because he mistakenly believed he was acting in self-defense.

Self-defense is a justification defense. With respect to justification defenses, the Supplemental Commentary to § 702–205 (1993) notes as follows:

The Legislature enacted § 702–205 of the Proposed Draft of the Code without change; however, in Chapter 703, dealing with defenses of justification, the Legislature departed from the Proposed Draft and required an objective assessment of the defendant's state of mind, or a "reasonable belief" on the defendant's part, respecting the attendant circumstances which justify conduct otherwise deemed unlawful.

In other words, Smith's mistaken belief that the brothers were attacking him is covered under the defense of self-defense. The record shows that the jury was properly instructed concerning Smith's defense of self-defense.

### C.

 Smith also argues that the trial court erred when it refused to instruct the jury on the offenses of Assault in the Second Degree based on recklessness [15] and Reckless Endangering in the Second Degree.[16] We disagree.

In his Reply Brief, Smith contends in relevant part as follows:

To support an "intentional" state of mind, the jury must find, beyond a reasonable doubt, that Smith acted intentionally with respect to his conduct, the attendant circumstances and a result of his conduct. Smith does not claim that he did not act intentionally with respect to his conduct, i.e., the firing of the firearm. However, the evidence is susceptible to the conclusion that Smith did not act intentionally with respect to attendant circumstances and the result of his conduct. The fact that Smith did not take further steps to

injure or cause the death of the complaining witnesses indicates that Smith did not intend to cause the death of the complaining witnesses. Thus, a reasonable juror could conclude that Smith did not intend to cause the death (the result of conduct) of the three complaining witnesses. A reasonable juror could further conclude that Smith was reckless when he caused serious bodily injury to the three complaining witnesses. As such, there was a rational basis to acquit Smith of Attempted Murder in the First Degree and convict him of Assault in the Second Degree, based on reckless conduct.

Under HRS § 705–500, "A person is guilty of an attempt to commit a crime if the person: ... (b) [i]ntentionally engages in conduct which, ..., constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime." Thus, for Smith to have committed attempted murder, he must have acted "intentionally." Under HRS § 702–206(1)(a) (1993), a "person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct."

For Smith to have committed Assault in the Second Degree based on recklessness under HRS § 707–711(1)(b) or Reckless Endangering in the Second Degree under HRS § 707–714, he must have acted "recklessly." Under HRS § 702–206(3)(c), a "person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." Consequently, in order for there to be a rational basis for a verdict acquitting Smith of attempted murder and convicting him of assault based on recklessness or reckless endangering, there must be evidence that it was not Smith's "conscious object" to shoot the complaining witnesses, but that he merely "consciously disregard[ed] a substantial and unjustifiable risk" that he would cause

15. HRS § 707–711(1)(b) (1993) provides as follows: "(1) A person commits the offense of assault in the second degree if: ... (b) [t]he person recklessly causes serious bodily injury to another person[.]"

16. HRS § 707–714 (1993) provides in relevant part as follows: "(1) A person commits the offense of reckless endangering in the second degree if the person engages in conduct which recklessly places another person in danger of death or serious bodily injury."

them or place them in danger of serious bodily injury.

Assuming a finding that Smith shot the gun, nothing in the evidence presented supports a finding that his acts of shooting the complaining witnesses were reckless and not intentional. At the time of the shooting, Smith exited his car, approached the Dela Cruz brothers and, from five to eight feet away, fired one shot into Fulton's "upper belly." He then shot Adrian in the back. He then fired two shots at Bobbitt as she was running away and one of the shots hit Bobbitt in the back.

### D.

HRS § 701–109(5) (1993) states that "[t]he court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." *See Moore,* 82 Hawai'i at 211–12, 921 P.2d at 131–32 (citation omitted). Nevertheless, the Hawai'i Supreme Court ruled in *State v. Kupau,* 76 Hawai'i 387, 879 P.2d 492 (1994), that

> [t]he trial judge must ... give each [included offense] instruction to the jury unless (1) the prosecution does not request that included [offense] instructions be given and (2) the defendant specifically objects to the included offense instructions for tactical reasons. If the prosecution does not make a request and the defendant makes a tactical objection, the trial judge must then exercise his or her discretion as to whether the included offense instructions should be given. The trial judge's discretion should be guided by the nature of the evidence presented during the trial, as well as the extent to which the defendant appears to understand the risks involved.

*Id.* at 395–96, 879 P.2d at 500–01 (footnotes omitted). *See also Moore,* 82 Hawai'i at 209–10, 921 P.2d at 129–30. In Smith's case, condition (1) was satisfied. The State did not request any included offense instructions and objected to some of them as follows:

> [DPA:] ... Your Honor, with respect to the lesser included offenses, the State ob-

jects to all of them except for Attempted Assault I as to Adrian and Fulton Dela Cruz and Attempted Assault I and Attempted Assault II as to Priscilla Bobbitt, the State feels that those are proper included offenses. But to put in Attempted Assault II for ... Fulton and Adrian and anything less than that for any of them including Reckless Endangering in the Second Degree is not justified. There's no basis in the law for doing that. And, also based on the facts of this case.

Condition (2), however, was not satisfied because Smith did not object to any of the included offense instructions.

With respect to jury instructions, the relevant transcript states in relevant part as follows:

> THE COURT:
>
> . . . .
>
> First of all, lesser includeds [sic] under [Counts] 2, 3 and 4, will be given with respect to Attempted Assault in the First Degree and Attempted Assault in the Second Degree under all three of those counts.
>
> And I'll note for the record that there will be no completed assaults given as lesser included under those counts.
>
> . . . .
>
> [DPA:] ...
>
> With ... respect to the lesser included offenses, the State objects to all of them except for Attempted Assault I as to Adrian and Fulton Dela Cruz and Attempted Assault I and Attempted Assault II as to Priscilla Bobbitt, the State feels that those are proper included offenses. But to put in Attempted Assault II for and Fulton and Adrian and anything less than that for any of them including Reckless Endangering in the Second Degree is not justified. There's no basis in the law for doing that. And, also based on the facts of this case.
>
> . . . .
>
> THE COURT: ...
>
> . . . .
>
> Since we have an attempt context here and the only lesser includeds [sic] that will be given are attempt, then you'll have the

anomaly of intentional reckless behavior which has been dealt with in the cases already. And that's not permitted with respect to anything less than Attempted Assault in the Second Degree.

It's true that Reckless Endangering in the Second Degree is by case law generically a lesser included offense of Attempted Murder, however, in a particular case the standard is rationale [sic] basis for acquitting of the higher and rationale [sic] basis for convicting of the lower. And it appears that to be no rationale [sic] basis for acquitting of Attempted Assault in the Second Degree because [there] seems to be no substantial evidence to support a rationale [sic] basis that he intended or knew he was doing anything but putting a hole in somebody or a bullet hole in somebody and that is Attempted Assault in the Second. So that's where it stops.

With respect to State's objection regarding going below Attempted Assault, First with respect to Fulton and Adrian, there is evidence regarding defendant aiming low. Much cross[-]examination on whether he did indeed aim at all. And some evidence that he wanted to teach people a lesson and expected them to live on after that. So it appears that there is a rationale [sic] basis to acquit all the way down and convict as to substantial bodily injury to wit: maim or penetration of the skin, bullet holes. So that's why the court's stopping there as to all three defendants.

Defendant's Requested Jury Instruction No. 9 was a request for an instruction on the included offense of Assault in the First Degree. However, after the court ruled that "the only lesser includeds [sic] that will be given are attempt," defense counsel stated: "As to number 9, I guess, the court is saying that we have withdrawn that. And that's fine because of the Attempted Assault in the First Degree."

The trial court instructed the jury in relevant part as follows:

Under any of Count II, Count III or Count IV of the indictment, if and only if you find the defendant not guilty of the charged offense of Attempted Murder in the Second Degree, or you are unable to reach a unanimous verdict as to this offense, then you must determine, under that count or counts of the indictment, whether the defendant is guilty or not guilty of the included offense of Attempted Assault in the First Degree.

A person commits the offense of Attempted Assault in the First Degree if he intentionally engages in conduct which is a substantial step in a course of conduct intended or known by him to cause serious bodily injury to another person.

. . . .

Under any of Count II, Count III or Count IV of the indictment, if and only if you find the defendant not guilty of the included offense of Attempted Assault in the First Degree, or you are unable to reach a unanimous verdict as to this offense, then you must determine, under that count or counts of the indictment, whether the defendant is guilty or not guilty of the included offense of Attempted Assault in the Second Degree.

A person commits the offense of Attempted Assault in the Second Degree if he intentionally engages in conduct which is a substantial step in a course of conduct intended or known by him to cause substantial bodily injury to another person.

The record does not reveal why the DPA objected to jury instructions on the included offenses of Assault in the First Degree and Assault in the Second Degree and why the trial court decided not to instruct the jury on those offenses.

Under HRS § 707–710(1) (1993), "[a] person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person." Under HRS § 707–711(1)(a), "[a] person commits the offense of assault in the second degree if . . . [t]he person intentionally or knowingly causes substantial bodily injury to another[.]" Under HRS § 702–206(1)(c), a "person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result." Under HRS § 702–206(2)(c), a "person acts knowingly with respect to a result of his conduct when he is aware that it is practical-

ly certain that his conduct will cause such a result."

In *Moore*, the Hawai'i Supreme Court assumed "without deciding, that assault in the first degree and assault in the second degree [were] lesser included offenses of attempted murder," *id.* at 211, 921 P.2d at 131, and stated that

> [t]he relevant distinction between attempted murder in the second degree, on the one hand, and assault in the first degree or assault in the second degree under HRS § 707–711(1)(a) ..., on the other, is the result caused by Moore. Therefore, the only rational basis for a verdict acquitting Moore of attempted murder and convicting him of assault under HRS §§ 707–710[or]—711(1)(a) ... would be evidence that it was not Moore's conscious object, *see* HRS § 702–206(1)(c) (1993), or that he was not aware that it was practically certain, *see* HRS § 702–206(2)(c) (1993), that his conduct would cause the death of Mrs. Moore, but, rather, that it was his conscious object or that he was aware that it was practically certain that his conduct would cause her only serious or substantial bodily injury.

*Id.* at 212, 921 P.2d at 132. The court ruled that based on the evidence, no reasonable juror could rationally infer that Moore contemplated a result other than Mrs. Moore's death and held that Moore was not entitled to instructions on assault. *Id.*

The evidence in this case, however, is distinguishable from the evidence in *Moore*. In *Moore*, "the evidence at trial established that Moore fired at least six shots at Mrs. Moore from point-blank range with a .32 caliber revolver, causing five gunshot wounds to her upper body, three of which were to vital areas." *Id.* In contrast, Smith fired only one shot each at the "upper belly" of Fulton and the back of Adrian from five to eight feet away and two shots at Bobbitt who was farther away. He did not make any further attempts to injure or kill the complaining witnesses, nor did he prevent them from receiving help. When ruling upon the jury instructions, the trial court stated that there was "some evidence that [Smith] wanted to teach people a lesson and expected them to live on after that." Also, while Smith's comments during the previous day that "he would take care of [the Dela Cruz family]" and that "he wanted to shoot all of them" suggest that his conduct was intentional and not reckless, it does not indicate whether Smith intended to cause the deaths of the Dela Cruz family or to cause serious or substantial bodily injury to them. A reasonable juror could infer that it was not Smith's "conscious object" to, or that he "was [not] aware that it was practically certain that his conduct" would, cause the deaths of the complaining witnesses, but rather that he would only cause them serious or substantial bodily injury. Therefore, the jury should have been instructed on the included offense of assault.

Under HRS § 701–109(4)(b), attempted assault is an included offense of assault.[17] The primary difference between an assault and an attempted assault is the result caused. In an assault, serious or substantial bodily injury to another person is caused. In an attempted assault, only a substantial step in a course of conduct is taken toward causing serious or substantial bodily injury to another person. In this case, the evidence was that Fulton, Adrian, and Bobbitt suffered serious or substantial bodily injury. There was no rational basis for a reasonable jury to acquit Smith of attempted murder and assault and convict him of attempted assault. Thus, the trial court should not have instructed the jury on attempted assault.

## CONCLUSION

Accordingly, we vacate the February 24, 1998 Judgment and the December 8, 1997 Order Dismissing Counts II–IV Without Prejudice and remand this case for a new trial consistent with this opinion.

---

17. HRS § 701–109(4)(b) (1993) states that an offense is an included offense when "[i]t consists of an attempt to commit the offense charged or to commit an offense otherwise included therein[.]"