61 P.3d 537

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Michael ARAKAWA, Defendant–Appellant**

No. 23994.

Intermediate Court of Appeals of Hawai'i.

Dec. 20, 2002.

Certiorari Denied Jan. 31, 2003.

Moana Ramaya, for defendant-appellant.

Tracy A. Jones, Deputy Prosecuting Attorney, County of Maui, for plaintiff-appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

## OPINION OF THE COURT

FOLEY, J.

Defendant–Appellant Michael Arakawa (Arakawa) appeals from the Amended Judgment of Probation entered in the Family Court of the Second Circuit ("family court") on December 27, 2000. Following a bench trial,[1] Arakawa was convicted of Abuse of Family or Household Members in violation of Hawaii Revised Statutes (HRS) § 709–906 (Supp.2001).[2]

On appeal, Arakawa contends (1) the family court abused its discretion by admitting evidence of threats made by Arakawa, (2) the family court abused its discretion by precluding Arakawa from eliciting testimony about the complaining witness's prior conviction, (3) the family court erred in finding sufficient evidence to convict Arakawa, and (4) defense counsel rendered ineffective assistance.

We disagree with Arakawa's contentions and affirm his conviction.

## I. BACKGROUND

On August 7, 2000, Arakawa was charged by written complaint with "Abuse of Family and Household Member" in violation of HRS § 709–906 for abusing Brenda Carmichael (Carmichael) on July 29, 2000. At the bench trial on November 30, 2000, the State produced seven witnesses and Arakawa testified in his own defense.

Theresa Hogan (Hogan), a Maui resident who had known Arakawa for about fifteen years, testified that Carmichael was Araka-

---

1. The Honorable Geronimo Valdriz, Jr. presided.

2. HRS § 709–906 (Supp.2001) provides in pertinent part:

 **§ 709–906. Abuse of family or household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

 For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

wa's girlfriend. On July 29, 2000, Hogan received a telephone call from Arakawa. Arakawa stated that he had "busted" Carmichael in the face and broken her nose while the couple was in a van in front of Arakawa's father's house in Lahaina. Hogan asked where Carmichael was, and Arakawa replied that Carmichael was at the neighbors' place "crying on their shoulder and bleeding all over their house." Hogan told Arakawa to keep his hands off Carmichael, calm down, and bring Carmichael and her things to Hogan's house.

When Hogan asked Arakawa why he hit Carmichael, Arakawa stated it was because Carmichael "didn't know when to shut up and when to back off and leave him alone." In response to Hogan's statement that Arakawa could "wind up killing" Carmichael, Arakawa said he had "kickboxed [Carmichael] through a screen door at one time in California and she got up and came right back at him and she could handle it." Arakawa had previously informed Hogan that he had a black belt in kickboxing; Hogan had seen Arakawa perform martial arts moves on mats in her garage.

Hogan testified that when Carmichael and Arakawa arrived at Hogan's residence, Carmichael's nose was "still bleeding and her face was already swollen" and she was crying and screaming and yelling at Arakawa. Carmichael had two lumps on her forehead, two lumps on the back of her head, and lumps on her nose. In response to Carmichael's crying and screaming, Arakawa took a half-step towards her, cocked his fist at waist-level, and asked, "You want me bust the other side of your face?"

Hogan testified that Arakawa never mentioned being hit by Carmichael during the half hour Arakawa was at her house. According to Hogan, Arakawa had no bodily injuries or markings on his face when he arrived at her house.

Hogan testified that after sustaining the injuries on July 29, 2000, Carmichael said the back of her head hurt, her nose hurt, she had a bad headache, she was sick to her stomach, and her throat kept filling up with blood. Three days later, Hogan observed that both of Carmichael's eyes were swollen shut and

her face was black, green, yellow, and red. Two photographs depicting Carmichael, taken on July 29 after the incident, were introduced into evidence as State's Exhibits 1 and 2.

Hogan testified that Carmichael stayed with her off and on for two to three weeks after the incident. Hogan spoke with Arakawa a couple of times during this two- to three-week period about anger management counseling; Arakawa's response was "[t]hat if he had to pay for anger management classes somebody was going to get killed." Regarding anyone testifying against him at this trial, Arakawa stated that "if they weren't for him they were against him and that he wasn't going to put up with that." If Carmichael testified against him, Arakawa said "they were going to find her in a cane field." Hogan testified that she loved Arakawa like she loved her own children and she did not like testifying at the trial.

Paramedic Brenda Molina (Molina) testified that she treated Carmichael on July 29, 2000. Carmichael had swelling above and below one of her eyes and above her nose, and she complained about a headache and that her nose had been bleeding for the prior few hours. Carmichael appeared afraid and upset and told Molina that she had been punched in the face.

Elizabeth Kamanu (Kamanu) testified that she was the mother of Arakawa. Arakawa was engaged to Carmichael, and the couple had lived with Kamanu from the end of February or beginning of March 2000 until June 2000.

Police Officer Aaron Kamaunu (Officer Kamaunu) testified that he went to Hogan's house on July 29, 2000 to "help with the victim Carmichael." Kamaunu observed that Carmichael was upset and "feared" Arakawa. Carmichael had bumps on the "front by the forehead area," and one of her eyes was "swollen or kind of bluish, like a bruising type of thing." Kamaunu testified that the green blouse Carmichael had been wearing at the time of the incident had dried blood on it.

Police Officer Richard Dods (Officer Dods) testified that he was assigned to locate Ara-

kawa regarding Arakawa's making threatening telephone calls to Carmichael. Officer Dods located Arakawa and, with Officer Brandon Koyama (Officer Koyama), arrested Arakawa at approximately "2356 hours" on July 29, 2000.

Officer Koyama testified that on July 29, 2000, he had been assigned to respond to an "abuse-type" case at Hogan's address, where he met with Carmichael. Carmichael had lumps "to her forehead" and dried blood inside her nose. She was crying, "kind of hysterical," and scared.

Officer Koyama testified he later received a telephone call from Arakawa in which Arakawa stated he was actually the victim in the case and Carmichael had struck him first, but he did not have any injuries. On cross-examination, Officer Koyama testified that he observed "little scratches" or an "abrasion" on Arakawa's face that evening. A photograph taken by Officer Koyama of Arakawa's facial injuries was introduced into evidence as defense Exhibit A.

At the close of the State's case, Arakawa moved for Judgment of Acquittal. The family court denied the motion.

Arakawa testified that on July 29, 2000, he and Carmichael, his fiancée, were gathering Carmichael's things to move Carmichael into Hogan's house. They loaded Carmichael's things into a van. Arakawa drove the van, and Carmichael was in the passenger seat. There was a verbal confrontation between Arakawa and Carmichael in the van because Carmichael did not want to move into Hogan's house—she wanted to stay with Arakawa.

While Arakawa was driving around a bend in the road, he glanced to his right side at Carmichael, and Carmichael struck him in the face with something and said, "You fucker, you can't leave me." Because Arakawa had turned his face to the right, the abrasion was to his left cheek. Although Arakawa sustained the abrasion at that time, he was not aware of it until Daniel Merritt, at whose house he was staying, asked Arakawa what had happened to his cheek. Arakawa testi-

fied that in the van Carmichael had struck him in the face before he hit her. Carmichael had also struck him in the past.

Arakawa testifed that after he was struck, he responded immediately by whipping out or throwing out his hand, which "caught" Carmichael "right on the upper part . . . of her forehead." After he stopped the van, he turned and looked at· Carmichael and saw blood on her face. Arakawa testified he swung his hand out at Carmichael because he was not sure what Carmichael was "about to do" and he had acted to "prevent what was happening until [he] could get the vehicle stopped."

They drove to Maui Medical, but Carmichael was not treated. They returned to their former residence to get Carmichael's identification, and Arakawa called Hogan. On the telephone, Arakawa told Hogan that he "kind of hit" Carmichael in the nose and "she had a little blood on her nose." Hogan became hysterical and accusatory to Arakawa, as if Arakawa were going to harm Carmichael. Arakawa and Carmichael did not go back to the hospital because Carmichael determined she did not need any medical treatment. They proceeded to Hogan's house.

Upon arriving at Hogan's house, Carmichael was crying and hysterical because she did not want to part from Arakawa. Arakawa reversed the van into Hogan's neighbor's yard and stayed in the van while Carmichael unloaded her things. Arakawa testified that he was probably there four minutes—enough time for Carmichael to remove her things from the van. He then left.

Arakawa testified that Carmichael came back the following day to pick up a few things and two days later she was again living with him.[3] They were together for about three weeks, until Carmichael left the island. Just before leaving, Carmichael wrote a note to Arakawa that stated, "Michael, it's urgent you get ahold of me as soon as possible. . . . [Telephone number.] Call at 6:00. Need my things. My flight takes off early tomorrow. The police have been trying to subpoena me so I got out of town. Please

---

3. Hogan had testified that Carmichael and Arakawa did not get back together nor live together

within forty-eight hours after the July 29 incident.

call." The note was introduced into evidence as defense Exhibit B as relevant to the issue of why Carmichael was not present in court.[4]

On cross-examination, Arakawa denied making admissions to Hogan regarding his busting Carmichael's nose and kickboxing her through a screen door. Arakawa stated that Hogan had "been known to exaggerate" and called Hogan a liar. He denied threatening to bust up the other side of Carmichael's face and making any subsequent threats against Carmichael and her family. Arakawa testified he had intermittent martial arts instruction in Lahaina and had obtained a red belt.

## II. STANDARDS OF REVIEW

### A. The Admissibility of the Evidence

#### 1. Right/Wrong

■ [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawaii,* 74 Haw. 308, 319–20, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993).

■ "Under the right/wrong standard, [the appellate court] examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it." *State v. Timoteo,* 87 Hawai'i 108, 113, 952 P.2d 865, 870 (1997) (internal quotation marks omitted; brackets added).

■ A trial court's determination that evidence is "relevant" is reviewed under the right/wrong standard of review. *State v. Pulse,* 83 Hawai'i 229, 247, 925 P.2d 797, 815, *amended on reconsideration in part,* 83 Hawai'i 545, 928 P.2d 39 (1996). In contrast, evidentiary decisions based on HRE Rule 403, which require a judgment call on the part of the trial court, are reviewed for an abuse of discretion. HRE 404 represents a particularized application of the principle of HRE 403 (see Commentary to HRE 404), and we will employ the same abuse of discretion standard of review.

*State v. Richie,* 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998) (internal quotation marks and footnotes omitted).

#### 2. Abuse of Discretion

■ We apply two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard.

*State v. Ortiz,* 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (citations and internal quotation signals omitted). An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Culkin,* 97 Hawai'i 206, 213, 35 P.3d 233, 240 (2001) (internal quotation marks omitted).

### B. Sufficiency of the Evidence

■ The standard of review on appeal for sufficiency of the evidence is substantial evidence.

"We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was be-

---

4. Defense counsel argued the State was making a claim that Arakawa had made threats to Carmichael and that Carmichael was "in fear" of Arakawa. The note was introduced to negate the State's claim. The family court ruled:

[THE COURT:] [The State is] saying that . . . [Arakawa's] threatening the complainant not to show up in court today; he's saying he has a note saying why she's not here. So, I think it's all relevant and I'm going to give it the weight I think.

fore a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed."

" 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence."

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931 (1992), *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992)) (brackets in original); *see also State v. Reed,* 77 Hawai'i 72, 81–82, 881 P.2d 1218, 1227–28 (1994); *In re John Doe, Born on January 5, 1976,* 76 Hawai'i 85, 92–93, 869 P.2d 1304, 1311–12 (1994); *State v. Silva,* 75 Haw. 419, 432, 864 P.2d 583, 589–90 (1993).

*State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996).

## C. Ineffective Assistance of Counsel

■ The proper standard for claims of ineffective assistance of counsel on appeal is whether, "viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." *Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (internal quotation marks and brackets omitted).

When an ineffective assistance of counsel claim is raised, the defendant has the burden of establishing: 1) that there were specific errors or omissions reflecting

counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

*State v. Jones,* 96 Hawai'i 161, 166, 29 P.3d 351, 356 (2001) (internal quotation marks omitted).

## III. DISCUSSION

### A. Threats Allegedly Made By Arakawa

#### 1. Relevance

■ According to Hogan, Arakawa made three threatening statements: (a) if Arakawa had to pay for anger management classes, "somebody was going to get killed"; (b) if someone were to testify against him in the instant case, he "wasn't going to put up with that"; and (c) if Carmichael testified against him, "they were going to find her in a cane field." Arakawa contends Hogan's testimony regarding the threatening statements made by Arakawa was not relevant to any fact of consequence related to the abuse charge. The threshold inquiry, therefore, is whether Hogan's testimony about these threatening statements was relevant. *State v. Renon,* 73 Haw. 23, 32, 828 P.2d 1266, 1270 (1992). Hawai'i Rules of Evidence (HRE) Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We review the issue of relevance under the right/wrong standard of review. *Pulse,* 83 Hawai'i at 247, 925 P.2d at 815.

Arakawa was charged with intentionally, knowingly, or recklessly engaging in and causing physical abuse of a family or household member (Carmichael) in violation of HRS § 709–906.[5] In his closing argument, defense counsel conceded that Carmichael sustained injury as a result of Arakawa's hand striking her. Defense counsel claimed

---

5. As HRS § 709–906 does not specify the state of mind required, HRS § 702–204 (1993) provides the default. It states in pertinent part:

§ 702–204 State of mind required....
When the state of mind required to establish

an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

Arakawa was justified in that he acted in self-defense,[6] thereby putting in dispute what Arakawa's state of mind was at the time he struck Carmichael.

The State had the burden of proving that Arakawa committed the abuse recklessly, knowingly, or intentionally and the burden of rebutting Arakawa's self-defense claim. The fact that Arakawa made threats against potential testifying witnesses rendered it more probable that he had "consciousness of guilt" with respect to the alleged abuse. *See State v. Smith*, 91 Hawai'i 450, 459, 984 P.2d 1276, 1285 (App.1999) ("It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt." Quoting *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir.), *cert. denied*, 510 U.S. 948, 114 S.Ct. 391, 126 L.Ed.2d 339 (1993)); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 404.22[3] n. 40 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2002) (evidence that a defendant intended to silence a potential witness held relevant and admissible in various circuits). The fact that Arakawa made threats of violence against the complainant also rendered his self-defense justification less tenable. Although it is possible for an innocent defendant to threaten a potential complaining witness, the threat indicates some level of awareness that the defendant may be found guilty and reveals defendant's intent to thwart the witness from providing potentially damaging testimony. Thus, the evidence of the threats was relevant in the instant case.

### 2. Probable Value vs. Prejudicial Impact

■ Arakawa contends the family court abused its discretion by admitting Hogan's testimony about threats made by Arakawa two to three weeks after the July 29, 2000 abuse incident. The admissibility of evidence of the threats is governed by HRE Rule 404(b) (Supp.2001), which provides in part:

**6.** HRS § 703–304 (1993) provides in pertinent part:

**§ 703–304 Use of force in self-protection.** (1) Subject to the provisions of this section and of section 703–308, the use of force upon or

**Rule 404 Character evidence not admissible to prove conduct; exceptions; other crimes.**

. . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

"It does not matter whether the proffered act occurred before or after the charged crime or other conduct at issue in the present suit, as long as relevancy is shown." 2 Weinstein & Berger, *supra*, § 404.20[2][a] (footnote omitted).

■ The Hawai'i Supreme Court has stated that "the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a cost-benefit calculus and a delicate balance between probative value and prejudicial effect." *Sato v. Tawata*, 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995) (internal quotation marks and brackets omitted). In a jury-waived trial, the judge is entitled to greater discretion in questioning witnesses and hearing evidentiary motions because, in such cases, there is no possibility of jury bias. *State v. Sprattling*, 99 Hawai'i 312, 322–23, 55 P.3d 276, 286–87 (2002).

In *State v. Castro*, 69 Haw. 633, 756 P.2d 1033 (1988), a jury convicted Castro of attempted murder and assault of his estranged girlfriend, Harkin. The Hawai'i Supreme Court decided the trial court had abused its discretion by admitting evidence that Castro had previously slapped, punched, threatened, and raped Harkin. *Id.* at 641–44, 756 P.2d at 1039–41.

toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

The holding of *Castro* is distinguishable from the instant case in two key respects. First, in *Castro,* the Hawai'i Supreme Court noted that although evidence of other crimes could be admitted to prove "guilty knowledge," Castro had already conceded knowledge. *Id.* at 645, 756 P.2d at 1042. In the instant case, Arakawa's state of mind was still at issue, both because of the intent requirement and the claimed self-defense justification. *Castro* is also distinguishable on the basis that it involved a jury trial, in which the supreme court feared the danger that the evidence would likely "weigh too much with the jury and to so overpersuade them." *Id.* (internal quotation marks omitted). Given that Arakawa's case involved no jury, there was no such danger here.

The factors used in the *Castro* analysis, however, are pertinent. The supreme court stated that numerous factors should be considered when balancing the potential prejudice against probative value, including

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 644, 756 P.2d at 1041 (quoting E.W. Cleary, *McCormick on Evidence* § 190 (3d ed.1984)).

The Hawai'i Supreme Court has upheld the admissibility of other crimes, wrongs, or acts that help prove the particular issues that arise in domestic violence cases.[7] In *State v. Clark,* 83 Hawai'i 289, 926 P.2d 194 (1996), the court affirmed Clark's conviction for attempted second-degree murder of his wife, Diana. During the jury trial, although Diana admitted having told a detective and others that Clark had stabbed her, Diana recanted the charge. She stated she had initially lied and then proceeded to exculpate Clark by stating that she had stabbed herself. *Id.* at 292–93, 926 P.2d at 197–98. The Hawai'i

Supreme Court held that the lower court properly admitted evidence of two police investigations in the previous five months at the Clark residence, during both of which Diana first lied and exculpated Clark but later admitted he was violent. *Id.* at 293 & 302, 926 P.2d at 198 & 207.

In its review of the lower court's analysis, the supreme court observed that the list of permissible purposes enumerated in HRE Rule 404(b), such as "motive" and "intent," was "not intended to be exhaustive." *Id.* at 300, 926 P.2d at 205. The supreme court stated:

> [W]e hold that, where a victim recants allegations of abuse, evidence of prior incidents of violence between the victim and the defendant are relevant to show the trier of fact the context of the relationship between the victim and the defendant, where, as here, that relationship is offered as a possible explanation for the victim's recantation.

*Id.* at 302, 926 P.2d at 207. Deferring to the trial court's discretion, the supreme court agreed that the probative value of the prior acts far outweighed prejudice where the relationship was offered to explain a major fact at issue—the victim's recantation. *Id.* at 302–03, 926 P.2d at 207–08; *see also State v. Shiroma,* 9 Haw.App. 578, 855 P.2d 34 (1993) (following jury trial convicting defendant of terroristic threatening and unlawful imprisonment, reviewing court upheld HRE Rule 404(b) admission of evidence indicating victim cut off relationship with defendant based on her fear of his drug dealing; the evidence was relevant to rebut defense that victim was jealous of defendant's dating another woman).

In *State v. Maelega,* 80 Hawai'i 172, 907 P.2d 758 (1995), the defendant was charged with murder for strangling and stabbing his wife, Eyvette. The Hawai'i Supreme Court held that the lower court did not abuse its discretion in admitting Maelega's prior acts of violence against Eyvette where the acts had taken place within one month of the murder; where Maelega had put his state of mind at issue by raising the defense of "ex-

---

**7.** For a comparison of domestic violence cases from Hawai'i and other jurisdictions that allow evidence of prior abusive acts under Rule 404(b), see Sarah J. Lee, Comment, *The Search for Truth:* *Admitting Evidence of Prior Abuse in Cases of Domestic Violence,* 20 U. Haw. L.Rev. 221 (1998).

treme and emotional mental disturbance"; and where Eyvette was not present to rebut Maelega's claims, increasing the need for the evidence. *Id.* (the Hawai'i Supreme Court reversed and remanded on other grounds); *see also United States v. Chase,* 301 F.3d 1019, 1026–28 (9th Cir.2002) (following jury trial convicting defendant of threatening to murder federal agents, reviewing court upheld admissibility of threats defendant made against other persons because the threats permitted prosecutor to explain defendant's retaliatory state of mind at the time he committed the crime). In the instant case, similar to *Maelega,* Arakawa's threats were made within the two to three weeks after the July 29 incident and, therefore, were not remote. The fact that Carmichael was outside the subpoena power of the family court and unavailable to testify increased the need for the evidence under the required Rule 404(b) analysis.

The evidence of the subsequent threats also related to the context of the relationship between Arakawa and Carmichael. In making its findings, the family court heeded the testimony of Molina, Kamaunu, and Koyama in finding that Carmichael was "afraid" and "scared," rather than being upset over the break-up as alleged by Arakawa. The family court made an assessment about the context of the relationship by determining there was no evidence that Carmichael was upset about breaking up with Arakawa. Arakawa's

threatening statements were admissible as probative of the context of the relationship between Arakawa and Carmichael, as well as Arakawa's consciousness of guilt. *Clark,* 83 Hawai'i at 302, 926 P.2d at 207; *Smith,* 91 Hawai'i at 459, 984 P.2d at 1285.

The family court was required to weigh the probative value of Arakawa's threatening statements against the potential for prejudice, but was not required to enter written findings if the weighing was adequate. *See United States v. Sangrey,* 586 F.2d 1312 (9th Cir.1978) (refused to require a recitation of Rule 403 formula on the record as a prerequisite to a Rule 404(b) admission, if it was clear from the record that an adequate weighing had been made); *see also State v. Pinero,* 70 Haw. 509, 518, 778 P.2d 704, 711 (1989) (overturned Rule 404(b) admission where record did not indicate a weighing had been made). The family court held an extended colloquy with counsel about HRE Rule 404(b) and the Rule 403 weighing before admitting the evidence.[8]

It is clear from the record that the family court weighed the probative value of Arakawa's threatening statements against the danger of prejudice. The fact that it was a trial without a jury minimized the danger of undue prejudice.

The family court, in admitting Arakawa's threatening statements, did not clearly ex-

---

8. During the State's examination of Hogan, Hogan was asked what Arakawa specifically said about anger management classes. Hogan testified Arakawa stated that "if he had to pay for anger management classes somebody was going to get killed." Defense counsel moved to strike Hogan's answer as not relevant to the date of the incident:

[Deputy Public Defender (DPD)]: Okay. Your Honor, I'm going to move to strike that last answer as not relevant to September twenty—the date of the incident. Has nothing to do—it's not relevant.

. . . .

[Deputy Prosecuting Attorney (Prosecutor)]: I would respond that, number one, it's a party admission; number two, it goes to his state of mind; number three, under 404(b), other crimes, wrongs, or acts, it's evidence of his intent, his plan, his motive, and his absence of mistake or accident, which I anticipate a self-defense complaint.

[DPD]: But—but I would suggest to this Court that under a 403 balancing test, some-

thing that this guy allegedly says two weeks after the incident is far more prejudicial than probative as to what happened on the day of the incident.

[Prosecutor]: Your Honor, and I would argue that under the 404(b) balancing test, one of the most significant factors the Court is looking at is, number one, prejudice to the jury. We don't have a jury. We have a judge who is perfectly capable right here to balance the information given.

The other considerations under *State v. Renon* (phonetic) [sic] is the fact that—the need for evidence, number one; the efficacy of alternative proof. She was the only one the statement was made. Also—

THE COURT: Okay, [Prosecutor], I'm going to overrule the objection. I'm going to allow it. I'm going to weigh it as I deem proper.

Prosecutor: Thank you, your Honor.

THE COURT: Taking into consideration that it was made after the incidence [sic], weeks afterwards. And I'll leave it up to the parties to argue later on.

ceed "the bounds of reason or disregard[ ] rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992). Therefore, we conclude there was no abuse of discretion by the family court in admitting Hogan's testimony regarding Arakawa's threatening statements.

### B. Testimony About Complainant's Prior Conviction

 Arakawa contends the family court abused its discretion by precluding Arakawa from testifying that he had read paperwork indicating Carmichael had a previous conviction. When a witness testifies to facts supplied by a hearsay source as if it is from personal knowledge then the correct objection is "lack of personal knowledge," although the root cause is the reliance upon a hearsay source. *State v. Okumura*, 78 Hawai'i 383, 398–99, 894 P.2d 80, 95–96 (1995). As the proffered testimony was not based on personal knowledge,[9] the evidence was properly held inadmissible.

### C. Sufficiency of the Evidence

 The requisite state of mind element for physical abuse of family or household member is intentionally, knowingly, or recklessly. HRS § 702–204; *State v. Canady*, 80 Hawai'i 469, 475, 911 P.2d 104, 110 (1996). To "physically abuse" someone under HRS § 709–906 means "to maltreat in such a manner as to cause injury, hurt or damage to that person's body." *Canady*, 80 Hawai'i at 474, 911 P.2d at 109 (internal quotation marks omitted).

 The family court found Hogan to be a more credible witness than Arakawa. In finding that Arakawa assaulted Carmichael, the family court looked to Arakawa's admissions to Hogan via telephone and face-to-face that he had "busted" Carmichael's face because she "didn't know when to shut up and when to back off and leave him alone."

Kamanu testified that Arakawa and Carmichael were engaged and they had lived with her in the spring of 2000, thus establishing that Arakawa and Carmichael were household members.

We defer to the family court's findings regarding the credibility of the evidence adduced at trial—Hogan's testimony, the corroborating testimony of the other witnesses, Arakawa's testimony, and the exhibits. Viewing the evidence in the strongest light for the State and allowing for reasonable inferences therefrom, we agree with the State that there existed sufficient evidence that Arakawa intentionally, knowingly, or recklessly physically abused Carmichael, as a household member, in violation of HRS § 709–906. *Eastman*, 81 Hawai'i at 135, 913 P.2d at 61.

 Arakawa claims the State introduced insufficient evidence to negate Arakawa's self-defense [10] claim. The burden was on the State to disprove the facts Arakawa introduced to raise the self-defense justification. *State v. Lubong*, 77 Hawai'i 429, 431, 886 P.2d 766, 768 (App.1994). The question before us is whether substantial evidence supported the family court's findings that Arakawa did not have a reasonable belief that it was immediately necessary to protect himself against the use of unlawful force by Carmichael. *State v. Sanchez*, 2 Haw.App. 577, 578, 636 P.2d 1365, 1367 (1981). "Reasonable belief" is "determined from the point of view of a reasonable person in the Defendant's position *under the circumstances as he believed them to be.*" *State v. Pemberton*, 71 Haw. 466, 477, 796 P.2d 80, 85 (1990) (emphasis in original).

The defense argued that, given Arakawa's testimony that he was driving the vehicle on a narrow street and was struck by Carmichael, his immediate blow to Carmichael to protect himself was justified. However, the family court did not find Arakawa a credible witness and found no credible evidence that

---

**9.** HRE Rule 602 states:

> **Rule 602 Lack of personal knowledge.** A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowl-

edge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' [sic] own testimony.

**10.** *See supra* note 6.

 

Arakawa's strike was justified. Viewing the evidence in the strongest light for the State and allowing for reasonable inferences therefrom, there was sufficient evidence to rebut the facts introduced to prove Arakawa acted in self-defense. *Eastman*, 81 Hawai'i at 135, 913 P.2d at 61; *Sanchez*, 2 Haw.App. at 578, 636 P.2d at 1367.

### D. Ineffective Assistance of Counsel

■ Arakawa contends his trial counsel was ineffective in failing to object to the State's question about Arakawa's subsequent threats and failing to investigate and subpoena exculpatory and character witnesses. The proper standard for claims of ineffective assistance of counsel on appeal is whether, "viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (internal quotation marks and brackets omitted). Arakawa has the burden of establishing that his counsel's specific "errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *State v. Jones*, 96 Hawai'i 161, 166, 29 P.3d 351, 356 (2001) (internal quotation marks omitted). Arakawa has not met that burden. Any failure on Arakawa's counsel's part to object to the State's questions about Arakawa's subsequent threats did not result in the withdrawal or substantial impairment of a potentially meritorious defense since these subsequent threats were admissible as previously discussed.

■ As to Arakawa's claims that his counsel failed to contact a witness, Daniel Merritt (Merritt), who was listed in the police report, nothing in the record indicates what Merritt's testimony would have been nor that its omission could have substantially impaired a potentially meritorious defense. *State v. Antone*, 62 Haw. 346, 348–49, 615 P.2d 101, 104 (1980). "Ineffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." *Richie*, 88 Hawai'i at 39, 960 P.2d at 1247. There is nothing in the record by affidavit or sworn statement indicating what Merritt's testimony would have been. Hence, this claim has no merit.

### IV. CONCLUSION

For the aforementioned reasons, the Amended Judgment of Probation entered in the Family Court of the Second Circuit on December 27, 2000 is hereby affirmed.