RODNEY HERBERT, Plaintiff-Appellee,
v.
STATE OF HAWAl'l, Defendant-Appellant.
No. 28701
Intermediate Court of Appeals of Hawaii.
April 16, 2009.
On the briefs:
Caron M. Inagaki, Kendall J. Moser, Deputy Attorneys General for Defendant-Appellant.
John Rapp, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
(By: WATANABE, Presiding Judge, NAKAMURA and LEONARD, JJ.)
Defendant-Appellant State of Hawai'i (State) timely-appeals from the Circuit Court of the First Circuit's (Circuit Court's)[1] Final Judgment (Judgment) in favor of Plaintiff-Appellee Rodney Herbert (Herbert) and against the State, filed on July 27, 2007, and challenges, in part, the Circuit Court's Findings of Fact and Conclusions of Law, filed on May 11, 2007, and Order Granting Plaintiff's [sic] Rodney Herbert's Motion for Award of Fees and Costs, which was filed on July 12, 2007.
The State raises the following points of error:[2]
1. The Circuit Court erred in admitting into evidence documents related to other bunk bed incidents.
2. The Circuit Court erred when it found in Finding of Fact (FOF) #11 that the State manufactured the bunk beds.
3. The Circuit Court erred when it found in FOF #13 that the bunk beds are defective products.
4. The Circuit Court erred when it concluded in Conclusion of Law (COL) #61 that Herbert was not at fault for his injuries.
5. The Circuit Court erred in admitting into evidence the opinions of Herbert's retained doctor, Dr. Alphonso Jimenez (Dr. Jimenez).
6. The Circuit Court erred by awarding Herbert all of his costs, in particular the costs for work performed by Drs. Neil Katz (Dr. Katz) and Rick Gill (Dr. Gill).
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the State's points of error as follows:
(1) The State's only objection to the admission of the incident reports was based on Hawai'i Rules of Evidence (HRE) Rule 403. "Evidentiary decisions based on HRE Rule 403, which require a `judgment call' on the part of the trial court, are reviewed for an abuse of discretion." Estate of Klink ex. rel. Klink v. State, 113 Hawai'i 332, 352, 152 P.3d 504, 524 (2007). Particularly in light of the fact that this was a bench trial, we conclude that the Circuit Court did not abuse its discretion in determining that at least some of the 405 prior reports of bunk bed injuries were more probative than prejudicial. See, e.g., State v. Arakawa, 101 Hawai'i 26, 35, 61 P.3d 537, 546 (App. 2002) ("The fact that it was a trial without a jury minimized the danger of undue prejudice.")
(2) The State challenges FOF #11, which states:
The bunk beds were manufactured by Defendant and pursuant to the direction and supervision of Defendant's employees by prison workers and employees of Defendant.
The State's argument regarding FOF #11 is, however, that the "Circuit Court found that the bunk beds at HCF are defective products manufactured by the State" and "[i]t was error for [the Circuit Court] to find the State strictly liable." The State's challenge appears to be directed at the theory of strict liability, rather than the facts and inferences supporting FOF #11. There is substantial evidence in the record to support FOF #11[3] and we conclude that the Circuit Court did not clearly err in entering FOF #11.
(3) The State challenges FOF #13, which states:
Plaintiff's foot injuries were legally caused by Defendant's defective product.
Even assuming that the Circuit Court erred in entering FOF #13, the Circuit Court's unchallenged COLs include:
54. Defendant was negligent in having bunk beds that were not equipped with ladders.
55. Defendant was negligent in failing to respond in a timely fashion after a series of inmates were injured attempting to exit from or enter into top bunks when the beds were not equipped with ladders.
56. Without ladders, the bunk beds were an unreasonably dangerous product that injured Plaintiff.
57. Defendant was negligent in failing to enforce its no-smoking policy in prisoner's cells and in failing to afford smoke breaks for prisoners who desired to smoke.
58. Defendant's negligence and product was a legal cause of injuries, damages, and pain to Plaintiff.
While this court agrees with the State that, in this case, the State is not subject to a strict products liability claim because the State is not in the business of selling or leasing the bunk beds in question,[4] it appears that the judgment in favor of Herbert and against the State was based predominantly on the unchallenged findings and conclusions concerning State's negligence, rather than a strict products liability theory. Indeed, inasmuch as FOF #13 merely finds and concludes that the defective bunk bed was the legal cause of Herbert's foot injuries, it is supported by substantial evidence in the record and is not clearly erroneous.
(4) In COL #61, the Circuit Court concluded that: "Plaintiff was not contributorily or comparatively negligent." FOFs ##14-21, which are unchallenged on appeal, describe the circumstances, events, and Herbert's actions leading up to the injury to his foot. The Circuit Court considered the testimony of Herbert to be credible and understandable as it related to his actions at the time he suffered the injury to his foot. The Circuit Court considered the evidence presented at trial bearing on negligence and weighed the factors contributing to Herbert's injury. In its oral ruling, the Circuit Court summed up its view on Herbert's actions: "Plaintiff did not do anything that a reasonable inmate would not do under like circumstances. The plaintiff is not contributorily negligent."
Hawai'i's appellate courts generally defer determinations on the credibility of witnesses and weighing of evidence to the trial courts:
In cases of conflicting evidence, the credibility of the witnesses and the weight to be given their testimony are within the province of the trial court and, generally, will not be disturbed on appeal. It is not the function of appellate courts to second-guess the trier of fact where there is substantial evidence in the record to support its conclusion.
Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 296-97, 141 P.3d 459, 469-70 (2006) (citation omitted).
There is substantial evidence in the record to support the Circuit Court's conclusion that Herbert was not contributorily or comparatively negligent. We will not second-guess the Circuit Court's conclusion in this case.
(5) In point of error #5, the State contends that the Circuit Court erred in admitting into evidence the opinions of Dr. Jimenez. At trial, after Dr. Jimenez was preliminarily examined on his qualifications by the court and the State, the State objected to Dr. Jimenez's testimony as follows: "as the evidence will show, the injuries on which Mr. Herbert sustained or is alleged to have sustained are not areas in which Dr. Jimenez is an expert." The Circuit Court overruled the State's objection. Whether the witness is adequately qualified is a preliminary matter for the court's determination, which is reviewable only for abuse of discretion. See, e.g., State v. Wallace, 80 Hawai'i 382, 406, 910 P.2d 695, 719 (1996); Bowman, Hawaii Rules of Evidence Manual (3rd Ed.), § 702-1 (2006).
[I]t is not necessary that the expert witness have the highest possible qualifications to testify about a particular matter,... but the expert witness must have such skill, knowledge, or experience in the field in question as to make it appear that his opinion or inference-drawing would probably aid the trier of fact in arriving at the truth.... Once the basic requisite qualifications are established, the extent of an expert's knowledge of the subject matter goes to the weight rather than the admissibility of the testimony.
Wallace, 80 Hawai'i at 419 n.37, 910 P.2d at 732 n.37.
Here, the Circuit Court conducted an inquiry into Dr. Jimenez's qualifications to offer an expert opinion as to the injuries that Herbert allegedly suffered. The inquiry included admitting Dr. Jimenez's curriculum vitae and hearing testimony from him regarding his experience, education, and training as a medical doctor. The Circuit Court also allowed the State ample opportunity to conduct a voir dire examination. Herbert established by direct examination that Dr. Jimenez is a licensed physician in the State of Hawai'i, has twelve years of experience as an emergency room physician, currently practices as a primary care physician, has experience with patients with broken bones including in their feet, has experience with patients with respiratory difficulties including asthma, and had personally analyzed medical problems Herbert claimed to have suffered in September of 2004. We conclude that the Circuit Court did not abuse its discretion in allowing Dr. Jimenez to testify in this case.
(6) On June 22, 2006, Herbert made an Offer of Settlement pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 68 to settle all his claims against the State for $5,000.
HRCP Rule 68 provides that:
At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall, in accordance with the agreement, enter an order of dismissal or a judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, either party may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.
It is undisputed that Herbert made an offer of settlement pursuant to HRCP Rule 6 8 more than ten days before trial. It is also undisputed that the State did not accept Herbert's offer.
The Hawai'i Supreme Court has explained the rationale of HRCP Rule 68's sanctioning of costs against an offeree who does not better his position after undertaking the expense of a trial:
[w]here an offeree fails to accurately evaluate the merits of his or her case, forcing the offeror to incur the substantial expense of trial, the consequences under Rule 68 are intentionally and deservedly harsh-to wit, the offeree must pay the "costs incurred after making the offer." Insofar as inclusion of reasonable expert witness fees as costs under HRCP Rule 68 would clearly serve to better promote the purpose and policies underlying the rule, we expressly hold that expert witness fees incurred after the making of an offer of judgment, if deemed reasonable, are taxable in the court's discretion as costs against the offeree pursuant to HRCP Rule 68.
Canalez v. Bob's Appliance Service Center, Inc., 89 Hawai'i 292, 308, 972 P.2d 295, 311 (1999).
On appeal the State challenges the costs for Dr. Gill based on the Circuit Court's statement that his testimony was not needed and would be disregarded because the court did not need him to tell the court that it is potentially dangerous not to have a ladder going to a bunk bed when there is a hard floor. Faced with a similar challenge to an expert witness's fees in Canalez, the supreme court decided that even though an expert's deposition testimony was not used at trial, it was nevertheless a reasonable cost in light of the party's explanation that the party was prepared to use the deposition testimony at trial if it was necessary. Canalez, 89 Hawai'i at 308, 972 P. 2d at 311. Notwithstanding its determination that Dr. Gill's testimony was unnecessary, the Circuit Court determined that Dr. Gill's expert witness fees were reasonably incurred. We will not disturb the Circuit Court's exercise of discretion in this regard. See Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 10-11, 143 P.3d 1205, 1212-13 (2006) (award of a taxable cost will not be disturbed absent a clear abuse of discretion).
Dr. Katz, on the other hand, does not appear to have been hired as an expert witness for the trial in this case. Although HRS § 607-9, when read in conjunction with HRCP Rule 68, supports an award of expert witness fees, it does not support an award for a non-testifying "expert consultant." See also, e.g., Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 271, 799 P.2d 60, 69 (1990) (disallowing costs not specifically allowed by statute or precedent). There was no indication in the record that Dr. Katz's expert consultation was necessarily obtained for use in the trial. Therefore, it was an abuse of discretion for the Circuit Court to award Herbert $1,500 for expert costs for Dr. Katz.
For these reasons, we reverse the $1,500 award of expert costs for Dr. Katz's consultation and otherwise affirm in all respects the Circuit Court's July 27, 2007 Judgment.
NOTES
[1] The Honorable Sabrina S. McKenna presided.
[2] Hawai'i Rules of Appellate Procedure (HEAP) Rule 28(b) provides, in relevant part: "Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."
[3] The record includes, inter alia, testimony that the beds had no identification of any manufacturer or country of origin (e.g., made in the U.S.A.), appeared not to be of commercial quality (based on the appearance of the welds for example), and appeared to have been made by facility workers or inmates under the supervision of the State.
[4] The Hawaii Supreme Court has described the Hawai'i products liability doctrine as follows:

[S]trict liability in tort is a sound legal basis for recovery in products liability cases. The leading arguments for the adoption of a rule of strict products liability have been that the public interest in human life and safety requires the maximum possible protection that the law can muster against dangerous defects in products; that by placing the goods on the market the maker and those in the chain of distribution represent to the public that the products are suitable and safe for use; and that the burden of accidental injuries caused by defective chattels should be placed upon those in the chain of distribution as a cost of doing business and as an incentive to guard against such defects.
Therefore, we adopt the rule that one who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the user or consumer without substantial change in its condition after it is sold or leased. This is essentially the rule adopted in the Second Restatement of Torts, Section 402A.
Leong v. Sears Roebuck and Co., 89 Hawai'i 204, 205, 970 P.2d 972, 973 (1998) (citation omitted) (emphasis added).